THE CAMDEN SAFE DEPOSIT AND TRUST COMPANY

*v.*

WILLIAM A. INGHAM, surviving executor &c., et al.

1. A married woman bequeathed to her husband, for life, three-fourths of the residue of the income of her estate, and also a contingent right (on the death of his children by her) to the remaining fourth, which she devoted to the maintenance and education of those children during his life, and made him one of her executors. He endorsed on the will, at the time of its execution, his consent thereto, under seal. He survived his wife ten years and never proved her will, but took out letters of administration on her estate.—*Held,* that his consent was upon valuable consideration and was irrevocable, and the probate of the will by his co-executors, after his death, valid.

2. The husband was one of two trustees to whom the above-mentioned one-fourth was given, to be applied, at their discretion, for the education and maintenance of the children during his lifetime. As before stated, the will was not proved by him.—*Held,* that his estate should not be held accountable to the children, after his death, for the fourth, which was not too much for their reasonable maintenance and education, but that he was, under the circumstances, entitled to the benefit of the provision, although the will was not proved in his lifetime.

3. In this case it was held that, under the circumstances, the estate of the guardian, the father of the wards, should be held liable for simple interest only, on his wards' moneys, from the expiration of six months after his having received the moneys which he failed to invest, and which cannot now be identified.

Bill for advice and relief. On exceptions to master's report and on final hearing on pleadings and proofs.

*Mr. S. H. Grey,* for complainant.

*Mr. M. P. Grey,* for C. M. Eakin, as administrator *de bonis non* &c. of James Eakin, deceased, and in his own right.

*Mr. H. A. Drake* and *Mr. B. Gummere,* for William A. Ingham, surviving executor of Mrs. Elizabeth G. Read, and for S. Davis Page, guardian of Juanita H. and Walter G. Read.

*Mr. M. R. Sooy,* for Adelaide S. Huston and Mary S. Read.

*Mr. H. C. Levis,* for Minnie P. Campbell and Henrietta C. Woodruff.

*Mr. C. E. Merritt,* for Alfred R., Ellen A. and Virginia C. Shreve.

*Mr. J. H. Gaskill,* for Ellen P. Russell and others.

THE CHANCELLOR.

This suit is in the nature of an interpleader. The complainant, the Camden Safe Deposit and Trust Company, is the administrator with the will annexed of Dr. Zachariah Read, late of Mount Holly, in this state, deceased, and the defendants are the persons who are interested in his individual estate, those who are interested in that of his wife, Elizabeth G. Read, deceased (who had a separate equitable estate and a statutory sole estate, and who predeceased him), and those interested in the estate of James Eakin, deceased, late of Mount Holly, one of whose executors he was, and to the sole administration of whose estate he succeeded by the death of his co-executors, Alphonso L. Eakin and Alexander R. Shreve. Claims having been made in behalf of Juanita H. and Walter George Read, children of Mrs. Read, to part of the assets as belonging to them under the will of their mother and otherwise, and claims having been made to another part of them in behalf of the Eakin estate, and like claim having been made upon the assets, or some part thereof, as being the individual property of the testator, Dr. Read; and the complainant being unable to decide the question so raised, it filed the bill, and thereupon the parties in interest interpleaded, although, in fact, no decree of interpleader was ever entered. In the progress of the cause there was an order of reference to a master to ascertain and report, among other things, which of the securities and other property that came to the possession of the complainant, as administrator, belonged, at the death of the testator, to the separate equitable estate of Mrs. Elizabeth C. Read, deceased, and

which to her other estate, and which to the Eakin estate, and which to Mrs. Read's two children, and which to Dr. Read's individual estate, and also what assets came to the possession of the complainant, as administrator, which cannot be identified as belonging to either of those estates or to those children, and also whether Dr. Read converted to his own use any of the property belonging to his wife's (Mrs. Elizabeth G. Read) estates, or either of them, and if so, what securities, funds or property he so converted, and what assets in the hands of the complainant, as administrator, represent such converted funds or property; and there was a like direction as to *devastavits* by him of the Eakin estate. The master reported, and the cause now comes before the court on exceptions filed to his report by the executor of Mrs. Read and the guardian of her two children, and also on final hearing. The exceptions are twelve in number.

The first and second are upon the ground that the master, in ascertaining the amount of property of the estates of Mrs. Read and her children, did not include therein any income arising from her estates after her death, whereas, as the exceptants insist, he ought to have included therein one-fourth of the income of those estates, with compound interest thereon by annual rests.

Mrs. Read died on or about November 23d, 1869. She had, as before stated, an equitable separate estate, and also a statutory sole estate, consisting of personal property, the latter acquired in part, at least, by her as one of the next of kin of her deceased brother. On the 22d day of January, 1869, she made her will, by which she disposed of all her property. She gave it to her executors (her husband and Dr. Read and Mr. William A. Ingham) in trust for certain designated uses, among which were the following: To pay out of the income $360 a year to Isabella Robinson so long as she should continue in charge of the testatrix's children; and as to the residue of the income, to pay three-fourths of it to Dr. Read for life, the other fourth to be paid for and used in the maintenance, support and education of any children born to the testatrix from her marriage to Dr. Read that might survive her, in such manner and in such

amounts as might seem best and most suitable in the discretion of the trustees, at any and all times during the life of their father; and if none of them should survive her, then to pay the whole of the income to Dr. Read for life. The will was made with the consent of Dr. Read. By a certificate appended to it, under his hand and seal, and witnessed by the two witnesses to the will, he declared as follows :

"This will has been made and executed by my wife, the above-written Elizabeth Grandin Read, with my full consent and entire approbation. In explicit testimony thereof, I hereto affix my hand and seal on the same day and year above written [the date of the will], meaning hereby to bind myself to its due and proper execution."

Mrs. Read's separate equitable estate amounted to over $60,000, and her other estate to about $5,000. As before stated, she died on or about November 23d, 1869. She left two children, Juanita H. and Walter George Read. Shortly after her death, Dr. Read called upon Mr. S. Davis Page, the gentleman by whom the will was drawn, and told him he had got the will from the person in whose custody it had been placed for safe keeping. In the course of conversation between them on the subject of the will, Dr. Read, in reply to Mr. Page's interrogatory remark, " But you are going to prove the will ? " or " You will abide by the will ? " said, with great solemnity, taking out of his coat pocket a paper which Mr. Page understood to be the will, " My wife's will is [or shall be] my law." Nevertheless, he did not prove the will, but took out letters of administration upon his wife's estate, and the will was not proved until after his death, which occurred July 28th, 1879, when it was proved by Mr. Ingham in the prerogative court of this state. The will was a valid one as to both estates of the testatrix. As to her equitable separate estate, the will needed no consent of her husband to make it valid, and as to the other estate, she had his consent, given in such a way that it was not in his power to defeat the will by any revocation of the consent. He not only gave his consent under seal, which imported a consideration, but he solemnly covenanted with her that he would duly and properly

Camden Safe Deposit and Trust Co. *v.* Ingham.

execute the will, thus by his deed accepting the trusts declared in it. There was, in fact, an actual and very valuable consideration for his consent. By the will, he was to receive, absolutely for his own use, three-fourths of the income of all of her estate for life (and in a certain contingency, the death of the children in his lifetime, the whole), and the other fourth was to go to support and educate his children, and so exonerate him from the cost of the performance of that duty. On the other hand, he enabled her, by his consent, to dispose of $5,000, her statutory sole estate, which she might have disposed of in her lifetime if he had refused his consent to the will. After having thus given his consent, he was, under the circumstances, bound to prove the will. It was a fraud upon his wife and those entitled to the benefit of her will, not to do it. In *Woodward* v. *Camp, 22 Conn. 457,* a married woman, being desirous of making a disposition of her real estate, to take effect after her death, united with her husband in the execution of a deed therefor to a trustee, authorizing him to make sale of the property, and out of the proceeds pay certain sums to certain persons and the residue to her legal representatives. The husband, after the deed had been fully executed, received it upon his express promise to deliver it to the grantee at his wife's death, if she should die before him. She died first. After her death he refused to deliver the deed. It was held that he was, under the circumstances, bound to deliver it. When a married woman's will is made in pursuance of an agreement before marriage, or of an agreement made after marriage, for a consideration, it is not revocable. *Roper on Hus. & W.,* by Jacob, *170,* note; *2 Bish. on Mar. Wom. 426 § 538; Emery* v. *Neighbour, 2 Hal. \*142; Pride* v. *Bubb, L. R. (7 Ch. App.) 64.* In *Van Winkle* v. *Schoonmaker, 2 McCart. 384,* where this court held that a husband's consent to his wife's will of her statutory sole estate was revocable, the consent was oral and without consideration, and the chancellor (Green) makes special mention of this latter fact. Dr. Read was bound by the will; and in this account his individual estate is entitled to the benefit of the gift, or three-fourths of the income made to him under it. The master has given it accordingly. No exception

is taken on that score; but the objection is that the children's estate is entitled to an allowance of the other fourth of the income. The objection is based upon the legal proposition that if the father of an infant, having an estate, be of sufficient ability to support the infant, support will not be ordered out of the infant's estate. In this case the testatrix intended that the infants should be supported and educated out of the one-fourth of the income, which fourth, by the will, she devoted to the purpose. She first gives to her husband three-fourths, and then directs that the other fourth be paid for and used in the maintenance, support and education of her children, in such manner and in such amounts as may seem best and most suitable, in the discretion of the trustees (of whom her husband was one), at any and all times during the life of her husband, and she then provides that in case of the death of all of the children in her husband's lifetime, that fourth go to him for life. She clearly intended by this provision to devote the one-fourth to the support and education of the children, in order to relieve their father from that expense. The legal proposition before mentioned, on which the objection is based, has no applicability to the case. The master finds that the one-fourth was a proper and not an excessive allowance for the support and education of the children during Dr. Read's lifetime. The first and second exceptions will be overruled. The third was withdrawn on the argument.

The fourth is an objection that the master did not include in the amount of the estate of the children of Mrs. Read, nor in the estate of their mother, the sum of $1,288.08, money received by Dr. Read January 21st, 1871, from the trustees of Mrs. Read's separate estate. This exception should be allowed. The money in question was indeed paid to him, by order of this court, as belonging to him, but it was awarded to him as part of her separate estate in the suit between the trustees complainants and him for an account of the estate in their hands, and directions to pay it over. The decree was made December 20th, 1870, about a year after Mrs. Read's death, and Dr. Read concealed the existence of her will under which the money in question would have gone to the trustees thereunder for the uses of the will, and

not to him individually for his own use. His estate should account to the children of Mrs. Read for it as a *devastavit* committed on the date of his receipt for the money, January 21st, 1871.

The fifth exception has already been disposed of in dealing with the first, second and fourth. One part of it is a repetition of the objection upon the ground of the non-charge of the one-fourth of the income of the residue of Mrs. Read's estate, which was the subject of the first and second exceptions, and the other is a repetition of the fourth exception.

The sixth exception is an objection to the principle upon which the master has charged Dr. Read's estate with interest upon the moneys of his children, Juanita and George, received by him as their guardian and not invested and not now identifiable. The master has charged simple interest from the time the money was received. The exceptants insist that he should have charged compound interest, with annual rests.

The master finds that the identifiable securities belonging to the children are of the par value of $12,000. They are one hundred and twenty shares of the stock of the Delaware and Hudson Canal Company. He also finds that three other sums, $856.03, $2,981.34 and $586.50 were received by Dr. Read as guardian. On the dividends received by the guardian upon the stock, the master has charged interest from the expiration of six months (time allowed for investment) after the receipt of the money, and on the sums just mentioned he has charged in like manner. Under the circumstances of the case, the estate of the guardian should not be condemned to pay compound interest. The exception will therefore be overruled.

The seventh exception is on the ground that the master has recognized the existence of an Eakin estate, whereas, as the exceptants allege, there was no such estate at the death of Dr. Read, but the assets referred to under that designation belonged, in fact, to the legatees under the Eakin will. By the order of reference the master was directed to ascertain and report which of the securities and other property in the hands of the complainant as administrator belonged, at the time of Dr. Read's

death, to the estate of James Eakin, deceased, and what *devastavits*, if any, Dr. Read committed as one of the executors, or as surviving executor of James Eakin, deceased; and what securities, funds or property, if any, belonging to the estate of James Eakin, deceased, were converted by Dr. Read in his lifetime, and what assets now in the hands of the complainant as administrator represent such converted securities, funds or property. The exception refers to the case. of *Huston* v. *Read, 5 Stew. Eq. 591* as authority for the allegation that the estate is, in fact, no longer the estate of James Eakin, but belongs to the persons entitled to it under his will. No decree has been entered in that case. The suit was brought for construction of the will of Mr. Eakin, and an account of the estate, and for directions for payment in accordance with the will as it might be construed. It was decided, and this court, in its opinion, decided the question as to the rights of the persons interested under the provisions of the will. It is obvious that there is no substance in this exception. The term " estate of James Eakin, deceased," in the order of reference, was employed to designate the property and assets of that estate, to whomsoever belonging, under the provisions of the will, and without reference to the ownership or destination thereof under that instrument. The exception will be overruled.

The eighth exception is upon the ground that in computing the amount due the Eakin estate the master did not charge, as paid thereout to the children of Alexander R. Shreve, the amount due them under the provisions of the Eakin will in favor of their deceased mother. This claim is based upon the allegation that the children received a bond of Richard C. Shreve, given to the executors of Eakin, for $10,000, borrowed from the funds of the estate, and that their father, Alexander R. Shreve, who was Dr. Read's co-executor, borrowed of the estate two sums of money, one for $10,000 and the other for $4,000, which were never repaid. It may be observed that those persons who are interested in the Eakin estate are satisfied with the report of the master. The only ground on which an exception on this head on the part of the exceptants, who have no interest in that

estate, can be entertained, is that if those sums, or any or either
of them be charged against the children of Alexander R. Shreve
as so much of the Eakin estate received by them, the amount of
the estate in the hands of Dr. Read at the time of his death
would be so much less, and thus the amount of the deficiency or
apparent *devastavit* would be reduced.

Dr. Read and Alexander R. Shreve filed their joint account as
surviving executors of the Eakin estate in the surrogate's office
of Burlington county, in the early part of the year 1870. It
was passed at the term of April of that year, of the orphans
court of that county. The balance established against them
thereby was $52,332.47. Shreve died in December, 1870, and
from the time of his death Dr. Read had sole charge of the estate.
He never filed any account afterwards. At the time of passing
the account of 1870, Dr. Read was chargeable with $52,332.47,
the balance of that account. The legal interest on that balance,
from that time until the time of his death, amounted to $33,418.61.
He paid out only $8,144.38. The master finds that the identi-
fiable securities and cash of the estate amount to $53,630.29;
and that there is a *devastavit* of $23,976.41 chargeable to Dr.
Read's estate. As to the $10,000 lent to Richard C. Shreve, it
is proved to have been lent by both executors, Dr. Read and
Alexander R. Shreve. It was lent upon the security of the
borrower's unsecured bond alone. The money was lost through
the insolvency of the borrower. He paid interest upon it up to
the spring of 1876, when he ceased, and paid nothing after that.
He says he cannot remember in what year the bond was given,
but it was a year or two before his brother's (Alexander R.
Shreve's) death. The latter died in December, 1870. The
master has credited Dr. Read's estate with interest paid upon
the bond, $700 a year, from March 25th, 1871, to March
25th, 1876, both inclusive—six years. There is manifestly no
ground for charging the children of Alexander R. Shreve with
the amount of that bond, or anything on account of it, except
the one year's interest which was received by them after their
mother's death, and Dr. Read's estate had credit for that in the
account. As to the alleged loans of $10,000 and $4,000 to their

father, it is enough to say that the evidence does not show that they were not repaid, nor that there was any *devastavit* on his part, except it may be in reference to the loan to his brother Richard, who, however, was solvent for four or five years after Dr. Read obtained the sole management of the estate. And it appears by the evidence that the latter was equally responsible with his co-executor for the loan.

The ninth exception is upon the ground that the master, in ascertaining the amount of Dr. Read's individual estate, did not include therein the amount of his first wife's interest in the Eakin estate. By the will of James Eakin, who died in 1856, certain legacies were given to Martha Read, then wife of Dr. Read. She died in 1861, leaving two children, the defendants Adelaide S. Huston and Mary S. Read. On her death her interest in the Eakin estate under the legacies was vested in her husband *jure mariti*. By his will he gave to her two daughters all the personal property in his possession which belonged to her, arising from the estate of James Eakin, deceased, and which, as the will states, he then held. The gifts to her under James Eakin's will were absolute (*Huston* v. *Read, ubi supra*), and, on her death, she having made no disposition of the property given to her, thereby the property passed to her husband, and became part of his individual estate. In ascertaining what moneys or securities belong to each estate, the master properly regarded the Eakin estate as an entirety, without considering whether Dr. Read was beneficially entitled to any part of it or not; but he should have reported that Mrs. Martha Read's interest in the Eakin estate constituted part of Dr. Read's individual estate. The exceptants are interested in this matter for the reason stated in passing upon the eighth exception. The exception will be allowed.

The tenth exception objects because thirty-four shares of the stock of the Farmers National Bank of Mount Holly, a mortgage given by Isaiah C. Duble, and "a large part of the cash on deposit" to Dr. Reed's credit in the above-mentioned bank, were reported as part of the Eakin estate. The exceptants insist that the master should have reported that the stock,

mortgage and cash in question belong to the estates of Mrs. Elizabeth G. Read and her children, Juanita H. and Walter George, but that it is impossible to determine to which of those estates they or either or any part of them belong. There is no evidence that the stock in question belongs to the estates of Mrs. Elizabeth G. Read or either of them, or that of her children. On the other hand, it seems quite clear, from the evidence, that it belongs to the Eakin estate. It was taken in settlement of a note belonging to that estate, and, although Dr. Read appears to have paid for it $809.48 in cash, in addition to the amount due upon the note, it does not appear that that cash was part of either of the estates of Mrs. Elizabeth G. Read or of that of her children, or that it was Dr. Read's own money. There is no evidence upon which the conclusion of the master, on this head, should be reversed ; on the contrary, the weight of evidence is in support of his decision. And so, too, as to the Duble mortgage. As to the remaining item, which is in reference to the allowance to the Eakin estate of part of the cash on deposit in the Farmers National Bank of Mount Holly, my attention has not been directed to any evidence on the subject, nor have I myself discovered any adverse to the conclusion reached by the master. The exception will be overruled.

The twelfth exception is the same, in substance, as the ninth.

The question whether the decree should order that the money and securities found to be due to the Eakin estate be delivered and paid over to the administrator *de bonis non,* or whether the court should itself, by its decree, distribute them among the parties claiming under the Eakin will, according to their rights as established in *Huston* v. *Read,* was discussed on the hearing. But it is quite clear that the court may take either conrse, as it may deem best. A decree may be entered upon the opinion in *Huston* v. *Read,* and any steps which may be necessary to establish the rights of the parties under the Eakin will, may be taken in that cause and a distribution be made there. That course will be adopted.

Claims against Dr. Read's individual estate, for indebtedness to the trust estates beyond the identifiable assets, will be paid ratably with those of other creditors, out of that estate.